IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-CR-00302-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. PATRICK SCOTT,

    Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**ENTERED BY MAGISTRATE JUDGE JAMES M. CANDELARIA**

    This matter is before the Court on the Competency Hearing held before the undersigned on June 7, 2023, to determine Defendant Patrick Scott's competence to proceed in this criminal case. Based on the following, the Court **recommends** that Defendant is not competent to proceed.

    Having judicially noticed all relevant adjudicative facts in the file and record, having considered Defendant's objection at the hearing to a finding of competency for purposes of proceeding with the criminal case against him, and having considered the Forensic Evaluation by both the Defendant's expert and the Government's expert the Court enters the following findings of fact, as supported by a preponderance of the evidence as required by 18 U.S.C. § 4241, and conclusions of law.

### I. Procedural Background

1.     On October 4, 2022, Defendant's counsel filed an unopposed motion for a

hearing to determine the mental competency of the Defendant.  *See* Doc. [#40].

2. On October 14, 2022, the District Court referred Defendant's Motion to this Court Doc. [41] whereby a hearing was set to hear the matter on November 9, 2022.

3. On November 9, 2022, at the urging of the Government, this Court appointed Dr. Jane Wells to examine the mental condition of the Defendant and ordered Dr. Wells to prepare a written report that included Defendant's history and present symptoms, a description of the psychological tests that were employed and the results, findings, diagnosis, opinions, and prognosis.

4. On February 10, 2023, Dr. Wells filed her report. Doc. [52].  Dr. Wells opined that Defendant likely had low-borderline range cognitive functioning with some mild memory impairment.  *See* Report p. 11.  Dr. Wells expressed a serious concern with Defendant's ability to adequately assist his attorney in his own defense due to his cognitive functioning, which appeared to be in the low average to borderline range.  Dr. Wells further noted that Defendant's neurocognitive screenings were consistent with some impairment in memory. *See id.*

5. After receipt of Dr. Wells' Report, this Court set the matter for hearing on April 11, 2023.  Doc. [53].

6. In response to Dr. Wells' Report, Defendant filed an unopposed Motion to continue Competency Hearing indicating that Defendant was contesting Dr. Wells' findings and had employed the services of Dr. Karen Fukutaki to

        perform an independent evaluation of Defendant. Doc. [54].

7.     Thereafter, this Court set the matter for hearing on June 7, 2023. Dr. Wells and Dr. Fukutaki testified and were both certified as experts and unopposed by either party. Both experts agreed that with repetitiveness and a slow pace, Defendant possessed the cognitive abilities to understand the nature of the charges against him. Both experts testified that Defendant demonstrated deficiencies in memory. However, each expert reached different conclusions on Defendant's competency to assist his counsel in his own defense.

## II. Findings of Fact and Conclusions of Law

8.     The determination of the mental competency of a defendant in a criminal case is governed by Title 18 U.S.C. § 4241. Pursuant to 18 U.S.C. § 4241(a), the Court shall order a hearing to determine the mental competency of a defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

9.     The Constitutional principles governing competency determinations are clearly established. "It is settled that trying an incompetent defendant violates due process." *Bryson v. Ward,* 187 F.3d 1193, 1201 (10th Cir.1999).

 "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran,* 509 U.S. 389, 402 (1993). A defendant

is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Cooper v. Oklahoma,* 517 U.S. 348, 354, (1996) (citing *Dusky v. United States,* 362 U.S. 402 (1960)).  Moreover, the Government may presume the defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence. *Cooper,* 517 U.S. at 355; see also 18 U.S.C. § 4241(d).   "Competency to stand trial is a factual determination that can be set aside only if it is clearly erroneous." *United States v. Boigegrain,* 155 F.3d 1181, 1189 (10th Cir.1998), *cert. denied,* 525 U.S. 1083 (1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. Verduzco–Martinez,* 186 F.3d 1208, 1211 (10th Cir.1999) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). The district court "need not be correct," but its finding "must be permissible in light of the evidence." *Id.* (citing *Bill's Coal Co. v. Board of Pub. Util. of Springfield, Missouri,* 887 F.2d 242, 244 (10th Cir.1989)). When assessing a defendant's competence, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *Boigegrain,* 155 F.3d at 1189 (citation omitted); *see also United States v. Williams, 113 F.3d 1155, 1159 (10th*

-4-

*Cir.1997)* (indicating that a district court may review "evidence of defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence") (citation omitted).

10. Government's expert Dr. Wells testified she administered several cognitive tests to Defendant. On the Montreal Cognitive Assessment ("MoCA"), a test for dementia, Defendant scored a 21. A normal range (no dementia) would fall between 27 and 30. Dr. Wells categorized Defendant's score as mild cognitive impairment. Dr. Wells also administered the Saint Louis University Mental Status ("SLUMS") examination which is also used as a screening test for Alzheimer's disease and dementia. Defendant scored 20 whereby a normal range is 27-30, mild dementia is in the range of 21-26 and dementia is 0- 20. Finally, Dr. Wells administered the Test of Memory Malingering ("TOMM"), to gauge exaggerated or malingered memory. Defendant scored a 34-50. Dr. Wells testified Defendant's low score on TOMM exam was not due to Defendant's malingering but rather Defendant's lack of effort. When given another opportunity Defendant raised his score to 38. Dr. Wells then opined that if Defendant was given extra opportunities to digest materials and concepts, he would be able to overcome his cognitive deficiencies and be able to assist his counsel in his own defense. Dr. Wells went on to testify that when Defendant was asked about aspects of his case, he did demonstrate an inability to recall details or concepts, but Dr. Wells attributed Defendant's inability to answer the questions as a product of his counsel's

advisement not to talk about his case rather than a cognitive deficiency.

11. Defendant's expert Dr. Fukutaki reached a different conclusion. She also found Defendant demonstrated cognitive deficiencies primarily in Defendant's ability to recall and understand concepts. Dr. Fukutaki pointed to the interview of Defendant by FBI agents where the interviewing agent spent 28 minutes just going through Defendant's *Miranda* warnings. Defendant appeared to be confused, unable to focus and unable to retain information. Dr. Fukutaki testified that when examining Defendant, he indicated that he liked his counsel and that he trusted his counsel. Defendant demonstrated a rudimentary understanding of the charges he was facing and with some cues from Dr. Fukutaki, he was able to describe what a plea bargain was and the functions of a judge and a jury. Dr. Fukutaki further testified that she posed a hypothetical situation to Defendant to test his ability to assist his counsel in his own defense. Dr. Fukutaki and Defendant were in the detention center where Defendant is being held when the hypothetical was posed. Dr. Fukutaki told Defendant someone was murdered out in the community today and the police think he did it. She asked Defendant for his thoughts and his reply was that he did not do it. When pressed as to why the police think he did it, Defendant was unable to come up with any defense as to why it could not have possibly been him. Dr. Fukutaki went on to opine that Defendant showed an inability to recall memories, and demonstrated a cognitive deficit when it came to understanding concepts, and the deficits

      became exaggerated as the concepts became more challenging. Dr. Fukutaki disagreed with Dr. Wells' opinion that extra time explaining the concepts would remedy Defendant's deficits. Dr. Wells opinion was based on her interview with Defendant where she was able to get Defendant to retain and recall aspects about the legal process and his case in general after going through it with him a few times. Dr. Fukutaki acknowledge that Dr. Wells was able to show Defendant could retain and recall information during a short period of time but Dr. Well's own report (Competency Interview pp. 7-9 Doc. [52]) indicated Defendant demonstrated very little knowledge of the case, the role of the prosecutor, the judge, and the jury, when Dr. Wells interviewed Defendant. Dr. Wells' interview was months after the case had been pending and after Defendant had the benefit of meeting with his counsel on multiple occasions.

12. In reaching her opinion that Defendant does not possess the ability to assist his counsel in his own defense, Dr. Fukutaki took into consideration Defendant's age (66), Defendant's scores on the MoCA and SLUMS tests indicating some measurable degree of dementia, his low intelligence, combined with defense counsel's concerns of Defendant's inability to recall and retain information, and Defendant's inability to assist in his own defense when given a hypothetical.

13. This Court finds and both experts agree that Defendant is currently suffering from measurable and demonstratable deficits. The difference being Dr. Wells

believes accommodations of extra time and further explanation combined with effort by Defendant could overcome Defendant's deficits and render him capable of assisting in his own defense. Dr. Fukutaki believes Defendant's deficits are not a result of lack of effort but rather a result of Defendant's diminished capacity, and therefore, the accommodations proposed would not be effective or practical given the need for Defendant to be able to retain legal concepts, recall details and share his knowledge and memory all of which are inherent in assisting counsel in preparation for trial.

14. After considering the testimony of both experts, reviewing the respective expert reports, the exhibits by both parties, and entertaining arguments, this Court finds by a preponderance of evidence that Defendant is incompetent to assist his counsel in his own defense, and therefore, recommends Defendant be remanded to the custody of the Attorney General of the United States for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and for an additional period of time until his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or the pending charges against him are disposed of according to the law. 18 U.S.C. §4241(d)(1) and (2).

15. Pursuant to 18 U.S.C. § 3161(h)(1)(A), the period of delay, i.e., from the

Defendant's motion, see [#40], on October 4, 2022, to the date of the District Judge's order on this Recommendation, resulting from these competency proceedings should be excluded in computing the time within which the trial must commence under 18 U.S.C. § 3161(c).

### III. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendant Patrick Scott be declared incompetent to proceed.

IT IS FURTHER **RECOMMENDED** that, pursuant to 18 U.S.C. § 3161(h)(1)(A), the period of delay, i.e., from the Defendant's motion, see [#40], on October 4, 2022, to the date of the District Judge's order on this Recommendation, resulting from these competency proceedings should be excluded in computing the time within which the trial must commence under 18 U.S.C. § 3161(c).

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Crim. P. 59(b)(2), the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo.

Dated: June 26, 2023          BY THE COURT:

_____
James M. Candelaria
United State Magistrate Judge

-9-